87 N.Y.2d 821 (1995)
660 N.E.2d 1134
637 N.Y.S.2d 355
The People of the State of New York, Respondent,
v.
Nathaniel Fields, Appellant.
Court of Appeals of the State of New York.
Argued October 18, 1995.
Decided November 29, 1995.
Edward J. Nowak, Public Defender of Monroe County, Rochester (Stephen J. Bird of counsel), for appellant.
Howard R. Relin, District Attorney of Monroe County, Rochester (Mark W. Pedersen of counsel), for respondent.
Chief Judge KAYE and Judges SIMONS, BELLACOSA, SMITH, LEVINE and CIPARICK concur; Judge TITONE dissents and votes to reverse in an opinion.
*822 MEMORANDUM.
The order of the Appellate Division should be affirmed.
At the trial of defendant on charges of rape (Penal Law § 130.35) and sexual misconduct (Penal Law § 130.20), the victim testified that on April 25, 1990, she and defendant had been smoking cocaine and he coaxed her back to her apartment where he raped and sodomized her. At around 3:30 A.M., in the midst of the crime, the victim told defendant that she was expecting a visit from her friend Kathleen Corey and had to telephone Corey to head her off, and she then placed a call to Corey telling her not to come to the apartment. Corey, who had met the victim when they both volunteered at a rape crisis center, testified that she in fact had no plans to visit her friend but discerned from the way she spoke on the telephone that she was in trouble. Corey therefore phoned the police, who went directly to the apartment. At the apartment, according to the testimony of a police officer, the victim told the officer that defendant, who was there with her, had raped her. Defendant did not testify at trial but argued consent as a defense.
In charging the jury, the Trial Judge provided an extensive instruction regarding the presumption of innocence, the burden of proof and the definition of reasonable doubt. After explaining that the indictment did not constitute evidence, the court stated: "If the evidence in the case reasonably permits a conclusion of either guilt or innocence, you should adopt a conclusion of innocence." Defendant objected to this last sentence.
Defendant was convicted of both rape in the first degree and sexual misconduct. On appeal defendant raised two issues: first, that on relevancy grounds the trial court erred in admitting *823 certain testimony of Corey and second, that the objected-to sentence in the charge required reversal. The Appellate Division affirmed the conviction, concluding that it was error (though harmless) to admit the evidence and that the charge considered as a whole was not erroneous. We now affirm, though disagreeing with the Appellate Division regarding admission of Corey's testimony.
After Corey testified that she had met the victim when they both volunteered at a rape crisis center, over defendant's objection Corey described her duties at the center as being "in charge of one of the support groups for rape victims. I did individual counseling with some of the victims, sometimes going to the hospital with them, attending legal procedures with them, giving them kind of moral support." Testimony about Corey's experience at the rape crisis center was plainly relevant both as to why Corey phoned the police and as to the victim's state of mind at the time of the crime.
Turning to the jury instruction, we do not consider the challenged sentence alone and in a vacuum but instead must read the instruction as a whole to determine if it was likely to confuse the jury as to the proper burden of proof (People v Mosley, 67 N.Y.2d 985, 987; People v Canty, 60 N.Y.2d 830, 831-832). We agree with the Appellate Division that the objected-to sentence, alone and in a vacuum, was improper and should not have been used because, in isolation, a juror might interpret it to authorize a guilty verdict even if the People did not establish the defendant's guilt beyond a reasonable doubt. The objected-to sentence, however, does not mandate such an inference by the jury, and here the court's extensive, accurate instructions on the burden of proof and the concept of reasonable doubt safeguarded against such an impermissible inference. Therefore, when considered as a whole, the charge sufficiently conveyed the correct standard.
TITONE, J. (dissenting).
I would reverse the judgment and order a new trial because the court's reasonable doubt charge incorporated language that diluted the People's burden of proof and, even when read in conjunction with the remainder of the charge, created a substantial risk of confusion.
We are unanimous in the conclusion that the portion of the reasonable doubt charge of which defendant complains was improper. As is implicit in the majority's holding, the disputed instruction conveys the false impression that the People may prevail if the evidence weighs slightly more heavily in their *824 favor (see, e.g., People v Weatherspoon, 155 AD2d 888; People v Hartle, 151 AD2d 1003; People v Celestin, 150 AD2d 385). Further, the use of the term "innocent" as a substitute for the term "not guilty" is offensive because it suggests that the defense must make some showing and cannot rely solely on the presumption of innocence.
Despite this serious flaw in the court's charge, the majority concludes that reversal is not required because the charge "as a whole" conveyed the correct standard of proof. In my view, that conclusion does not withstand analysis on this record.
It is true as the majority notes that a reviewing court should not consider a single instruction "alone and in a vacuum" (majority mem, at 823), but that observation does not, standing by itself, resolve the specific issue presented here. No instruction dealing with the "reasonable doubt" standard is ever issued "in a vacuum"; such instructions  whether accurate or misleading  are almost always issued as part of a series of sentences describing what constitutes reasonable doubt. In most cases in which a portion of the reasonable doubt charge is challenged, the trial court has given the boilerplate language contained in the Pattern Jury Instructions and then has added some improvised language of its own. The fact that the standard, previously approved reasonable doubt instruction has also been given cannot alone be sufficient to neutralize an otherwise improper or misleading instruction on the concept. To the contrary, each situation should be examined on its own facts to ascertain whether the erroneous instruction created a risk that the jury would be misled.
In making this assessment, the reviewing court must be sensitive to the fact that reasonable doubt is "a nebulous concept not susceptible of precise definition" (People v Antommarchi, 80 N.Y.2d 247, 251). Consequently, it is necessarily explained in general or abstract terms that some may find difficult to apply (id.). Furthermore, because the standard plays such a vital and, indeed, "indispensable" role in our system of criminal justice (see, In re Winship, 397 US 358, 363), reviewing courts should scrutinize a potentially misleading reasonable doubt charge with particular care.
Here, the trial court first instructed the jury on the general concept of reasonable doubt, defining it as a doubt arising from the evidence or lack thereof for which some reason can be given. It then stated, in somewhat circular fashion, that "[t]he doubt must be one that a reasonable person, acting in a matter such as this, would be likely to have." The court then went on *825 to enumerate what is not a "reasonable doubt" and explained that "[i]f the People have not proved the [d]efendant's guilt beyond a reasonable doubt, then you should find him not guilty." The presumption of innocence was correctly charged, and the court reiterated the People's burden of proving the defendant's guilt beyond a reasonable doubt. The very last point that the jury heard on the reasonable doubt standard was the instruction which, as we all agree, was improper.
Since the offending instruction came at the end of the reasonable doubt charge, there is a very real danger that the jurors regarded it as the "last word" and the most definitive explanation of the concept. Moreover, there was a substantial risk that the erroneous charge had a disproportionate influence on the jurors' understanding of reasonable doubt, since it was more vivid than much of the hazy and abstract definition that the court gave. Significantly, most of the remaining charge on reasonable doubt explained the concept by using one or more of the words "reason", "reasonable" or "doubt" and by explaining what a "reasonable doubt" is not. A juror struggling with the "nebulous" concept of reasonable doubt might well have grasped onto the court's statement about evenly divided evidence as the most readily understandable explanation of the concept  and the only one that was not selfreferential  and might then have applied it without further thought to the other, murkier portions of the court's reasonable doubt charge.
Significantly, the unobjectionable part of the trial court's reasonable doubt charge contained no language which contradicted the impermissible inference implicit in the objected-to charge, i.e., that if the preponderance of the evidence favors the People, a guilty verdict is the proper result. Thus, there was no reason for the jurors even to suspect that the foregoing is an erroneous standard (cf., People v Warren, 76 N.Y.2d 773, 775).
For all of the foregoing reasons, I disagree with the majority's conclusion that the charge here unequivocally conveyed the proper legal standard and that there is no serious risk that the jury was misled by the burden-diluting part of the court's reasonable doubt charge. Because an error in the reasonable doubt charge vitiates the reliability of the verdict as a whole (see, Sullivan v Louisiana, 508 US 275, 278-281), I would reverse the judgment of conviction and order a new trial.
Order affirmed in a memorandum.